1  CRAIG H. MISSAKIAN (CABN 125202)
   United States Attorney
2
   MARTHA BOERSCH (CABN 126569)
3  Chief, Criminal Division

4  E. WISTAR WILSON (CABN 324705)
   DANIEL N. KASSABIAN (CABN 215249)
5  Assistant United States Attorneys

6      450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
7      Telephone: (415) 436-7200
       FAX: (415) 436-7234
8      Wistar.Wilson@usdoj.gov
       Daniel.Kassabian@usdoj.gov
9
   Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:24-CR-00036-TLT |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | Hearing Date: January 23, 2026 |
| HANAN RODRIGUEZ, | Hearing Time: 9:30 a.m. |
| | Courtroom: 9, 19th Fl. |
| Defendant. | Hon. Trina L. Thompson |

## I. INTRODUCTION

One three separate occasions in 2019, 2020, and 2023, respectively, defendant Hanan Rodriguez was arrested for drug-trafficking in the San Francisco Bay Area. Each time, he possessed multiple controlled substances, including fentanyl, and in the 2023 incident, he did so while carrying two knives. Mr. Rodriguez engaged in this conduct after unlawfully returning to the United States sometime following his fifth removal in October 2017, and after sustaining six criminal convictions in the United States for drug-trafficking and immigration offenses.

Mr. Rodriguez pleaded guilty on July 24, 2025 to five felony counts: one count of Possession with Intent to Distribute 40 Grams and More of a Mixture and Substance Containing Fentanyl, in

violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi) (Count One), one count of Possession with Intent to Distribute 50 Grams and More of a Mixture and Substance Containing Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii) (Count Two), one count of Illegal Reentry Following Removal by Felon, in violation of 8 U.S.C. § 1326(a) and (b)(1) (Count Three), and two counts of Possession with Intent to Distribute a Mixture and Substance Containing Fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Counts Four and Five). Dkts. 103-04. He is scheduled to be sentenced on January 23, 2026, at 9:30 a.m. before this Court.

For the reasons articulated below, the Government recommends that the Court sentence Mr. Rodriguez to a total of 94 months' imprisonment. This sentence is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 1553(a), including the need for the sentence imposed to deter criminal conduct, protect the public, and reflect the seriousness of the offenses, among other goals of sentencing. *See* U.S.C. § 3553(a).

**II.     OFFENSE CONDUCT**

The charges in this case stem from three separate Bay Area drug-trafficking incidents that took place in 2019, 2020, and 2023, respectively, and an immigration offense that took place in 2020—an unlawful reentry by Mr. Rodriguez following his 2017 removal from the United States.

In the first incident, on December 19, 2019, SFPD arrested Mr. Rodriguez after watching him engage in drug-dealing activity in the Tenderloin in the middle of the day (approximately 12:30 p.m.). Presentence Investigation Report ("PSR"), Dkt. 111 at ¶ 7. An officer saw a group of individuals huddled around Mr. Rodriguez and holding out money in his direction, with one person asking audibly whether Mr. Rodriguez had fentanyl. *Id*. Mr. Rodriguez was observed selling a controlled substance to a woman from a pouch he was holding. *Id*. The officer managed to seize the controlled substance from the woman and attempted to arrest Mr. Rodriguez, but he fled. *Id.*; Plea Agmt, Dkt. 110 at ¶ 2. When Mr. Rodriguez was ultimately apprehended a few blocks away, officers located on his person or in his pouch 19 individually wrapped baggies containing 10.9 grams of fentanyl; approximately 24 grams of methamphetamine; approximately 16 grams of black tar heroin, and $860 in cash. PSR at ¶ 7; Dkt. 110 at ¶ 2.

In the second incident, on August 26, 2020, law enforcement agents executing a search warrant

1  found Mr. Rodriguez in possession of approximately 202 grams of fentanyl on his person and in a car he
2  was driving in Oakland.  Mr. Rodriguez also had in his bedroom additional suspected narcotics, two
3  digital scales, $1,238 in cash, drug packaging material, 15 cell phones, and a tablet.  PSR at ¶ 8.

4  In the third incident, on July 19, 2023, San Francisco Police Department officers responded to a
5  911 call reporting drug dealing in front of the Good Hotel in San Francisco in the middle of the day.  *Id.*
6  at ¶ 9.  The officers arrived on scene and identified Mr. Rodriguez as matching the 911 caller's
7  description of the drug dealer.  *Id*.  An officer then observed Mr. Rodriguez hold a clear plastic bag
8  containing suspected narcotics and quickly place it in his jacket pocket when the officer approached.  *Id*.
9  When officers searched Mr. Rodriguez incident to his arrest, they found on his person a variety of
10 controlled substances—including approximately 173 grams of fentanyl and 109 grams of
11 methamphetamine, as well as heroin, fluorofentanyl, and cocaine base—two knives, a scale, and $1,781
12 in cash.  *Id*.  This was apparently not an isolated incident; the 911 caller later reported having called the
13 police on Mr. Rodriguez for dealing drugs prior to July 19, having previously seen Mr. Rodriguez
14 outside the Good Hotel at all hours of the day, dealing drugs openly without much apparent concern
15 about getting caught.  *Id*.  The 911 caller reported that it was a scary and chaotic time for residents in the
16 vicinity of the Good Hotel.  *Id.*

17 Across these three charged drug-trafficking incidents, Mr. Rodriguez possessed 387.25 grams of
18 fentanyl, 53.57 grams of fluorofentanyl, 134.15 grams of methamphetamine, 41.59 grams of heroin, and
19 27.43 grams of cocaine base (all gross weights except for fluorofentanyl).  PSR at ¶ 12.

20 Mr. Rodriguez committed the instant offenses after having been removed from the United States
21 five times.  PSR at ¶¶ 10-11.  Following a felony conviction for a drug-trafficking offense in Utah in
22 April 2009, Mr. Rodriguez was removed from the United States for the first time in May 2009.  *Id*. at ¶
23 10.  He was removed for a second time in October 2010, but then in April 2011 sustained a federal
24 misdemeanor conviction for Eluding Examination/Inspection under 8 U.S.C. § 1325(a).  *Id*. at ¶¶ 10, 44.
25 He was removed for a third time in July 2011.  *Id.* at ¶ 10.  In December 2011, he sustained a conviction
26 for a felony drug trafficking offense under California law, and in April 2012, he incurred a federal
27 felony conviction for Reentry of Removed Alien, in violation of 8 U.S.C. § 1326.  *Id*.  He was removed
28 from the United States for a fourth time in October 2013.  *Id*.  In January 2017, Mr. Rodriguez was

convicted in federal court of Improper Entry by an Alien, in violation of § 1325. *Id.* at ¶ 11. He was removed for a fifth time on October 18, 2017. *Id.* Thereafter, he voluntarily reentered the United States and was found on May 2, 2020, in San Francisco without having obtained consent of the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission to the United States. *Id.*

### III.  GUIDELINES CALCULATION

The government agrees with the U.S. Sentencing Guidelines ("Guidelines") calculation set forth by U.S. Probation (and by the parties in the Plea Agreement), which results in a Total Offense Level of 29. *See* PSR at ¶¶ 18-39; Dkt. 110 at ¶ 7. The Guidelines range for a Total Offense Level of 29, for an individual with 11 criminal history points (Criminal History Category V), is 140 to 175 months' imprisonment. *See* PSR at ¶ 74. Counts One and Two of the Superseding Information (Dkt. 103) carry a mandatory minimum sentence of 60 months' imprisonment and four years of supervised release. *See* 21 U.S.C. § 841(a)(1) and (b)(1)(B). A sentence of 94 months' imprisonment, as recommended and discussed below, represents a 46-month downward variance from the applicable Guidelines range.

### IV.  SENTENCING RECOMMENDATION

The government recommends that the Court sentence Mr. Rodriguez to 94 months' imprisonment, followed by four years of supervised release. Such a sentence would be sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a)—including deterring criminal conduct, protecting the public, and reflecting the seriousness of the offenses, among other sentencing goals. It would accomplish these objectives while also appropriately accounting for mitigating factors applicable to Mr. Rodriguez's case.

The offense conduct in this case forms part of a troubling pattern of criminal activity and recidivist conduct dating back to 2009. Mr. Rodriguez has three prior felony convictions for drug-trafficking but does not appear to have been deterred—either by those convictions or his successive arrests in 2019 and 2020—from continuing to engage in drug-trafficking activity. Despite having been removed from the United States five times and sustaining three prior immigration convictions for illegally entering or reentering the United States, Mr. Rodriguez again unlawfully returned to the United States after his removal in 2017 and proceeded to engage in additional drug-trafficking conduct. That

conduct at times was brazen; as the circumstances of the 2019 and 2023 incidents indicate, Mr. Rodriguez engaged in open-air drug dealing in broad daylight while contributing to a fentanyl crisis that harmed individuals and communities in the San Francisco Bay Area.  And in contrast to the offense conduct underlying his first conviction in 2009 (when Mr. Rodriguez was 19 years old), he committed the conduct charged in the instant case when he was 29, 30, and 33, respectively.  His possession of knives in connection with the 2023 incident is likewise an aggravating factor.

There is thus a heightened need in this case for the Court's sentence to protect the public from additional drug-trafficking activity by Mr. Rodriguez, to deter him from engaging in further criminal conduct, and to reflect the seriousness of his offenses.  A sentence of 94 months' imprisonment would balance appropriately the need to advance these and other goals of sentencing set forth in 18 U.S.C. § 3553(a) while accounting for Mr. Rodriguez's history and personal characteristics.  Mr. Rodriguez experienced several significant hardships growing up in Honduras—including both losing his mother and stopping his education at the age of seven—and after coming to the United States without any family at the age of fourteen, that undoubtedly continue to affect his life and opportunities to this day.  PSR at ¶¶ 57-59.  In light of the foregoing, a 46-month downward variance from the low end of the applicable Guidelines ranges is appropriate in this case.

## V. CONCLUSION

For the reasons set forth above, a sentence of 94 months' imprisonment, followed by four years of supervised release, is sufficient, but not greater than necessary, to achieve the purposes of sentencing set forth in 18 U.S.C. § 3552(a).  The government requests that the Court sentence Mr. Rodriguez accordingly.

DATED: January 9, 2026                                      Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney


 */s/ E. Wistar Wilson*
E. WISTAR WILSON
DANIEL N. KASSABIAN
Assistant United States Attorneys